CLERK US DISTRICT COURT
NORTHERN DIST. OF TX.
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

2016 FEB 18   AM 8: 45

DEPUTY CLERK_____

| | | |
|---|---|---|
| **AMANDA BENNETT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 6:14-CV-0069-BL** |
| | § | |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Amanda Bennett ("Bennett") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision, which denied her application for a period of disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, respectively. The United States District Judge referred the case to this Court pursuant to 28 U.S.C. § 636(c) and the parties have not consented to proceed before a United States Magistrate Judge.

After considering all the pleadings, briefs, and administrative record, this Court recommends that the Commissioner's decision be affirmed.

## I.   BACKGROUND

Bennett claims that she became disabled on May 30, 2012, due to diabetes, arthritis, depression, back pain, knee pain, high cholesterol, obesity, and neuropathy. (Tr. 152). Bennett protectively filed an application for SSI on May 30, 2012. (Tr. 11). Bennett's application was initially denied on August 31, 2012, and on reconsideration on October 26, 2012. (Tr. 11). Subsequently, Bennett requested and received a hearing before Administrative Law Judge Ward King ("ALJ") on June 18, 2013. (Tr. 11). On October 10, 2013, the ALJ issued an unfavorable

decision finding that Bennett was not disabled and was capable of performing work existing in significant numbers in the national economy. (Tr. 23).

The ALJ followed the sequential five-step analysis to arrive at his decision.[1] First, the ALJ determined that Bennett had not engaged in substantial gainful activity since the alleged onset of her disability, May 30, 2012. (Tr. 13). Next, the ALJ determined that Bennett suffered from the following "severe combination" of impairments: Type I diabetes, diabetic neuropathy of the bilateral hands, a history of juvenile rheumatoid arthritis, obesity, and major depressive disorder, recurrent, moderate. (Tr. 14). Third, the ALJ surmised that none of Bennett's impairments equaled the severity of the impairments in the listings.[2] (Tr. 14). Next, the ALJ determined that Bennett had the residual functional capacity ("RFC") for the full range of light work with following limitations: Bennett cannot climb ladders, scaffolds, or ropes; she can only occasionally climb ramps or stairs, stoop, crouch, or crawl; she can frequently (but not constantly) balance or kneel; she can perform occupations involving detailed, but not complex, instructions; and she can have no more than superficial contact with the public, supervisors, or co-workers. (Tr. 14). The ALJ concluded that Bennett could not return to her past relevant work. (Tr. 20). But, the ALJ found that Bennett could perform work that existed in significant numbers in the national economy. (Tr. 21). Finally, the ALJ determined that Bennett was not disabled within the meaning of the Social Security Act. (Tr. 22).

The Appeals Council denied review on October 8, 2014. (Tr. 1). The ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

---

[1] *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).
[2] *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

## II.   LEGAL STANDARD

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)-(b) (2012). To evaluate a disability claim, the Commissioner employs the following five-step sequential analysis to determine:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Leggett v. Chater*, 67 F.3d 558, 564 n. 2 (5th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Before proceeding to steps four and five, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart,* 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

This Court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings, and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716,

718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

### III.   ANALYSIS

Bennett raises three[3] issues on appeal: (1) whether the ALJ properly factored Bennett's functional limitations, if any, into his RFC assessment, (2) whether the ALJ properly evaluated Bennett's credibility, and (3) whether the ALJ erred by giving "very significant weight" to the opinions of the State Agency medical consultants.

### A.   The ALJ properly arrived at his RFC determination.

Bennett argues that the ALJ's RFC failed to include any functional limitations regarding Bennett's use of her hands. Bennett contends that the ALJ acknowledged that she had the severe impairment of diabetic neuropathy of the bilateral hands, but, even so, his RFC did not restrict hand usage. Bennett "submits that determining the limitations in use of the hands, if such limitations exist, appears to be crucial in this case." (Doc. 17, p. 11). Bennett avers that Dr. O.

---

[3] Bennett purports to raise two issues on appeal, but, intertwined with another issue, Bennett raises the issue of whether the ALJ properly assessed her credibility. Therefore, the Court will address this as three issues.

Martin Franklin, a consultative examiner, found her to have mild to moderate sensory loss of the second through fifth digits bilaterally, with reduced grip strength in the hands and limited strength in the upper and lower extremities. (Doc. 17, p. 12; Tr. 275).

The Commissioner responds that while Dr. Franklin did diagnose Bennett with diabetic neuropathy, he did not express an opinion on any functional limitations. (Doc. 20, p. 7). The Commissioner adds that the "mere diagnosis of an impairment does not establish a disabling impairment or even a significant impact on that person's functional capacity." (Doc. 20, p. 7) (citing *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989)). Moreover, the Commissioner relies on the State Agency medical consultants' reports which do not indicate the presence of functional limitations regarding Bennett's hands. Specifically, Dr. Shabnam Rehman reviewed the medical evidence, including Dr. Franklin's report, and did not endorse any manipulative limitations.[4] Dr. Robin Rosenstock, who affirmed Dr. Rehman's Physical RFC assessment, also declined to identify any manipulative limitations. (Tr. 262).

The determination of a claimant's RFC is reserved for the ALJ alone. 20 C.F.R. § 404.1547(d)(2); SSR 96-6p, 1996 WL 374180. In determining RFC, the ALJ considers the individual's ability to meet the physical and mental demands, as well as the sensory and other requirements of the job. 20 C.F.R. §§ 404.1545(a), 416.945(a). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8P, 1996 WL 374184 (emphasis in original); *see* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ considers exertional and non-exertional limitations. *See Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); 20 C.F.R. § 404.1569(a). An ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary

---

[4] Manipulative limitations would include limitations in reaching in all directions, handling, fingering, and feeling. (Tr. 268).

conclusion. *Newton*, 209 F.3d at 455-56. Accordingly, the ALJ considers medical opinions, together with the other evidence, to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(b).

Here, the ALJ afforded "very significant weight" to the opinions of Drs. Rehman and Rosenstock, both of which found Bennett capable of light work with no manipulative limitations. (Tr. 16). Additionally, the ALJ proclaimed that his decision was based on all medical evidence in Bennett's file. (Tr. 11). As a result, Bennett's real quarrel is with the examining and consulting physicians who did not identify any manipulative limitations. Nevertheless, the ALJ is entitled to rely on the medical evidence on record in arriving at his RFC. *See* SSR 96-8P. Despite Bennett's claims that her diabetic neuropathy significantly limits her ability to work, there is no support for such contention in the record.

Accordingly, the Court finds that the ALJ's decision regarding the lack of manipulative limitations is supported by substantial evidence. This issue does require remand.

**B. The ALJ properly evaluated Bennett's credibility.**

Next, Bennett contends that the ALJ "failed to properly evaluate [Bennett's] asserted limitations and to explain his reasons for rejecting these complaints, other that his vague statement that they lacked credibility." (Doc. 17, p. 12). When a claimant alleges symptoms such as pain or fatigue, the ALJ must conduct an objective/subjective, two-step analysis to evaluate the symptoms. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008); SSR 96-7p, 1996 SSR LEXIS 4. During the first, objective step, the ALJ must determine whether there is an underlying, medically-determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms. *Salgado* at 458. When an impairment described in step one is established, then the ALJ proceeds through the second, subjective step to assess "the intensity,

persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* at 459. As part of the second step, the ALJ must make a finding regarding the credibility of the claimant's testimony regarding their symptoms. *Id.*

The Fifth Circuit explicitly rejected the requirement that an "ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Rather, the ALJ is simply bound to generally state his reasons for rejecting a claimant's complaints. *Id.* at 164. Both SSR 96-7p and 20 C.F.R § 416.929(c)(3) set out a seven-factor analysis for an ALJ to apply in order to assess the credibility of a claimant's subjective allegations of pain or fatigue. These factors include:

> (1) your daily activities; (2) the location, duration, frequency, and intensity of your pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (6) any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). Although the ALJ must articulate the basis for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Finally, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to

observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983) (per curiam). "Moreover, a factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

For the objective part of the two-step analysis, the ALJ determined that Bennett did indeed have a combination of severe, medically-determinable impairments, including Type I diabetes, diabetic neuropathy of the bilateral hands, a history of juvenile rheumatoid arthritis, obesity, and major depressive disorder, recurrent, moderate. (Tr. 14). As stated, the ALJ must then make, for the subjective part of the analysis, a determination as to the extent and credibility of the claimant's symptoms. In Bennett's case, the ALJ concluded that Bennett's "testimony regarding neuropathic numbness, swelling, and pain in her feet was not well supported by objective evidence" and had "minimal credibility." (Tr. 20). The ALJ was aware of the required analysis, but did not mechanically enumerate his analysis in the opinion. (Tr. 19-20).

Even so, the ALJ's opinion contains evidence that he thoroughly addressed the relevant factors enumerated in SSR 96-7p, although not specifically in list format. The ALJ considered Bennett's daily activities **(1)** and noted that she cleans her house, sweeps, mops, prepares meals, drives, shops for groceries and other household items, pays bills, watches television, and plays with her children. (Tr. 17). Next, the ALJ assessed the location, duration, frequency, and intensity of Bennett's symptoms **(2)** by examining and listing, in detail, Bennett's testimony regarding her symptoms and the medical observations of Drs. Franklin, Rehman, Lozano (Rozycki), Ghai, and Rosenstock. (Tr. 15-20). The ALJ also evaluated any precipitating and aggravating factors **(3)** related to Bennett's impairments; specifically noting that Bennett has not been treated for her juvenile rheumatoid arthritis despite having been diagnosed at age 15 and

8

that Bennett did not take her diabetes medicine as prescribed. (Tr. 15, 19). The ALJ, taking notice of the type, dosage, effectiveness, and side effects of any medication Bennett had taken to alleviate her pain or other symptoms **(4)**, noted that Bennett took Aleve to treat her pain with no side effects. (Tr. 19). The ALJ did not identify any treatment, other than medication, that Bennett utilized for relief of her pain or other symptoms **(5)**. Also, the ALJ did not identify any other measures that Bennett utilized to relieve her pain or other symptoms **(6)**. Finally, the ALJ clearly expressed knowledge of other factors concerning Bennett's functional limitations and restrictions due to pain or other symptoms **(7)**. This is evident in the ALJ's RFC assessment and findings. (Tr. 13-22).

Consequently, the Court finds that the ALJ conducted a proper credibility analysis by weighing both the objective and subjective evidence in Bennett's case. *See Prince*, 418 F. Supp. 2d at 871. The ALJ applied the proper legal standard to this determination and, as such, this issue does not require remand.

### C. The ALJ properly considered the opinions of the State Agency medical consultants.

As part of her argument, Bennett once again takes issue with the "inconsistency" between Dr. Franklin's findings regarding Bennett's diabetic neuropathy and the lack of manipulative limitations identified by Drs. Rehman and Rosenstock. As stated, Dr. Franklin did not identify any manipulative limitations relating to Bennett's impairments and, as such, the opinions of Drs. Rehman and Rosenstock were actually consistent, not inconsistent, with Dr. Franklin's findings. Having already fully addressed this issue, the Court moves on to Bennett's next allegation.

Next, Bennett claims that the ALJ erred by affording great weight to Dr. Ghai's opinion regarding Bennett's Mental RFC ("MRFC") assessment. Particularly, Bennett argues that Dr. Ghai acknowledged 11 occupational categories in which she was "moderately limited," but that

Dr. Ghai's MRFC failed to incorporate the identified limitations. Bennett avers that Dr. Ghai's resulting MRFC is internally inconsistent and, as a result, the ALJ's reliance on it is error. (Doc. 17, p. 13-14). The Commissioner responds that the 11 categories identified in Dr. Ghai's MRFC are considered "Summary Conclusions" that are derived solely from the medical evidence on record. The Commissioner posits that the "Summary Conclusions" do not reflect Dr. Ghai's actual assessment of Bennett's mental limitations, but instead, the "Summary Conclusions" merely form the basis of Dr. Ghai's MRFC. (Doc. 20, p. 15-16).

Dr. Ghai summarized the evidence in Bennett's file and concluded that she is "moderately limited" in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities with a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) interact appropriately with the general public; (8) accept instructions and respond appropriately to criticism from supervisors; (9) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (10) respond appropriately to changes in work setting; and (11) set realistic goals or make plans independently of others. (Tr. 244-245).

In the Social Security context, "not significantly limited" means that "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity," and "markedly limited" suggests that "the evidence supports the conclusion that the

individual cannot usefully perform or sustain the activity."[5] In comparison, "moderately limited" means that "evidence supports the conclusion that the individual's capacity to perform the activity is impaired."[6] In other words, "moderately limited" means that a person can perform the activity, but with some limitations.[7] By definition, "moderately limited" falls somewhere in between no limitations and wholly unable to perform the activity.[8]

In this case, Dr. Ghai opined in her MRFC that "[Bennett] can understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings." (Tr. 245). Bennett quarrels with Dr. Ghai's acknowledgment that her ability to understand, remember, and carry out detailed instructions is impaired, but that Dr. Ghai ultimately finds that she can understand, remember, and carry out detailed but not complex instructions.[9] Bennett's contention is without merit. Dr. Ghai acknowledged moderate limitations in the "Summary Conclusions" section of the MRFC form and later reflected those limitations in the actual RFC section of the form. (Tr. 244-246). "Moderately limited" means that Bennett's ability to perform that specific activity is impaired, not wholly precluded.[10] Dr. Ghai's MRFC did not state that Bennett was without functional limitations. (Tr. 246). On the contrary, Dr. Ghai identified the areas where Bennett was impaired and, accordingly, identified reasonable limitations based on those functional impairments. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 905 (5th Cir. 2010) (noting the consistency between the physician's findings that the claimant retained the functional capacity to "understand, remember, and carry out detailed and

---

[5] *See Program Operation Manual System* (POMS) DI 24510.063 Completion of Section I of SSA-4734-F4-SUP, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510063.
[6] *Id.*
[7] *See id.*
[8] *Id.*
[9] Bennett makes identical arguments regarding Dr. Ghai's findings on her concentration, persistence, and pace and her social functioning. (Doc. 17, p. 15).
[10] *See Program Operation Manual System* (POMS) DI 24510.063.

complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in the routine work setting," even though the physician found the claimant to be "moderately limited" in these areas).

Finally, Bennett argues that the ALJ failed to recognize and reconcile these internal inconsistencies in Dr. Ghai's MRFC, and, consequently, his RFC in not supported by substantial evidence. (Doc. 17, p. 14). As noted, the ALJ found Bennett capable of performing occupations involving detailed, but not complex, instructions and that she could have no more than superficial contact with the public, supervisors, or co-workers. (Tr. 14). In *Westover v. Astrue*, the court found that substantial evidence supported the ALJ's RFC assessment allowing the claimant to perform work that involved detailed instruction, despite his moderate functional limitations in concentration, persistence, or pace. No. 4:11-CV-816-Y, 2012 WL 6553102, at *9-10 (N.D. Tex. Nov. 16, 2012), *adopted in*, 2012 WL 6553829 (N.D. Tex. Dec. 13, 2012). Also, in *Holmes v. Astrue*, the court opined that the ALJ's finding that the claimant was moderately limited in maintaining concentration, persistence, and pace was not inconsistent with his ability to carry out detailed, but not complex instructions. No. 3:11-CV-2634-G BH, 2013 WL 638830, at *16 (N.D. Tex. Jan. 25, 2013), *adopted in*, 2013 WL 646510 (N.D. Tex. Feb. 20, 2013).[11] Finally, in *Herring v. Astrue*, the court held that the ALJ did not commit reversible error when, after considering the claimant's moderate limitations in social functioning, he found that the claimant could respond appropriately to supervisors, coworkers, and work pressures in a routine work environment. 788 F. Supp. 2d 513, 519-20 (N.D. Tex. 2011).

Accordingly, the Court finds that substantial evidence supports the ALJ's decision to afford great weight to the opinions of the State Agency medical consultants because they were

---

[11] *See also Chadwell v. Astrue*, No. 4:08-CV-736-Y, 2010 WL 3659050, at *11 (N.D. Tex. May 25, 2010), *adopted in*, 2010 WL 3658996 (N.D. Tex. Sept. 17, 2010); *Berry v. Astrue*, No. 3:11-CV-02817-L BH, 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in*, 2013 WL 540587 (N.D. Tex. Feb. 13, 2013).

not internally inconsistent. Further, the ALJ evaluated the entire record and sufficiently incorporated Bennett's functional and social limitations into the RFC. *See Westover*, 2012 WL 6553102, at *9-10; *Herring*, 788 F. Supp. 2d at 519-20. This issue does not require remand.

## IV.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's complaint be **DISMISSED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated February _/ 7_, 2016.

E. SCOTT FROST
UNITED STATES MAGISTRATE JUDGE